UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
AVROHOM WOLOWIK,

          Plaintiff,

vs.

CONTROL CREDIT MANAGEMENT, Inc.
FIRST ASSURANCE, AND
T-MOBILE,

          Defendants.
----------------------------------------x

**ORIGINAL**

# 07 CIV. 7130

COMPLAINT

**ROBINSON**

Plaintiff Demands A
Trial by Jury

*FILED 2007 AUG 10 A 10: 53 S.D. OF N.Y.W.P. U.S. DISTRICT COURT*

## INTRODUCTION

1.    This is an action for damages and declaratory relief by an individual consumer for Defendants' joint and several and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (hereinafter FDCPA), the Fair Credit Reporting Act, 15 U.S.C 1681, et seq., (hereinafter FCRA), the Fair Credit Billing Act, 15 U.S.C. §1666, et seq., (hereinafter FCBA), and infliction of emotional distress.

## JURISDICTION AND VENUE

2.    Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law. Defendants have violated the provisions of the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. 1367. Venue in this District is proper in that Defendants transact business here and the conduct complained of occurred here.

## PARTIES

1

3. Plaintiff, Avrohom Wolowik, is natural person residing at 2 Gel Court, Monsey, NY 10952, and a consumer pursuant to the FDCPA.

4. Defendant, T-Mobile., is regularly engaged in the servicing of mobile phones in this District. The Corporate Headquarters is located at 12920 Se 38th Street, Bellevue, WA 98006

5. Defendant, Credit Management Control, Inc, is regularly engaged in the collection of debts in this District. The principal place of business for Collection Agency is located at 2707 Rapids Drive, PO BOX 1408, Racine, WI 53401-1408.

6. Defendant, First Revenue Assurance, is regularly engaged in the collection of debts in this District. The principal place of business for Collection Agency is located at PO BOX 5818, Denver, CO 80217.

## FACTUAL ALLEGATIONS

7. Plaintiff, Avrohom Wolowik, had a cell phone with Defendant T-Mobile, Account # 265111377, through April, 2006.

8. Plaintiff, Avrohom Wolowik, paid his T-Mobile cell phone account by automatic payment through a checking account prior to cancellation of the service.

9. When Plaintiff, Avrohom Wolowik moved from Illinois to New York in December 2005, he requested that Defendant T-Mobile stop withdrawing the automatic payments as they no longer would be using their Bank Financial checking account. Instead, Plaintiff Avrohom Wolowik would pay Defendant T-Mobile manually.

10. Defendant T-Mobile continued to withdraw automatic payments from their unused bank account, despite Plaintiff's request to stop. This caused Plaintiff's checking

2

account to be depleted of money as well as cause him to be charged by both T-Mobile and his bank for the attempted withdrawals.

11.     T-Mobile shut off Plaintiff's service in April 2006.

12.     Plaintiff, Avrohom Wolowik, stopped using his cell phone when the service was turned off in April, 2006 and expected to receive a statement so he could close the account.

13.     Defendant T-Mobile continued to withdraw automatic payments from his checking account in April and May based upon usage when he had no usage, as Defendant T-Mobile had turned off the service. Plaintiff, Avrohom Wolowik was unaware that this was happening because his bank statements were being forwarded with their Illinois mail to New York every few months.

14.     Plaintiff Avrohom Wolowik's bank called him in early June to inform him of the payments and fees he was occurring for over drawing his account.

15.     Plaintiff Avrohom Wolowik called Defendant T-Mobile in early June to close the account with Defendant T-Mobile.

16.     On June 9, 2005, Plaintiff Avrohom Wolowik, received a letter from T-Mobile with a final bill covering all charged applied to his account through June 9, 2005 in the amount of $112.45.

17.     On July 12, 2005 Plaintiff, Avrohom Wolowik, paid the final statement with check #217 in full. It was cashed by Defendant T-Mobile.

18.     On November 14, 2005, Plaintiff Avrohom Wolowik, received a letter from Defendant First Revenue Assurance for $106.18 on his T-Mobile Account.

3

19. On November 22, 2005 Plaintiff's wife, Bella Wolowik, called Defendant T-Mobile to dispute the validity of the alleged debt. T-Mobile directed Plaintiff's wife to call Defendant First Revenue Assurance. When Plaintiff's wife, Bella Wolowik called Defendant First Revenue Assurance, they directed her back to T-Mobile. This back and forth happened again to Plaintiff's wife's until finally, a representative from T-Mobile spoke with her. Bella Wolowik spoke to a phone representative named Angela who noted in the records that Plaintiff had paid the final statement in full on July 12, 2006 and that they did not owe anything. Plaintiff's wife, Bella Wolowik confirmed this information with Defendant First Revenue Assurance and requested that they stop trying to collect the alleged debt.

20. On January 4, 2006, Plaintiff, Avrohom Wolowik, received another letter from Defendant First Revenue Assurance demanding Plaintiff pay $106.18 in regards to his T-Mobile account. Plaintiff, Avrohom Wolowik, called Defendant First Revenue Assurance to dispute the debt that he owed T-Mobile and First Revenue Assurance via phone in November 2005. Plaintiff explained that he and his wife had confirmed Plaintiff had paid the final statement in full in July 2005 the last time they disputed the debt. The phone representative explained that $106.18 came from a previous balance. Plaintiff, Avrohom Wolowik called T-Mobile to confirm that he did not owe anything his account after paying the final statement. T-Mobile confirmed that the previous balance was from ongoing usage charges for the service he didn't have and were erroneous. In fact, T-Mobile recognized that they owed Plantiff money for the overdrawn charges from his checking account (which has never been repaid).

21.     Plaintiff, Avrohom Wolowik, called back Defendant First Revenue Assurance after disputing the debt again with T-Mobile and faxed a copy of the phone representative's requested papers to show that he had paid the final statement in full. He also requested that Defendant First Revenue Assurance cease contact with him once they received this information

22.     On July 10, 2006 Plaintiff, Avrohom Wolowik received a letter regarding the alleged T-Mobile debt in the amount of $106.18 from a new collection agency, Defendant Credit Management Control. Plaintiff, Avrohom Wolowik disputed the validity of the debt by sending a fax back to Defendant Credit Management Control explaining that the final statement was paid and that nothing was owed. He also requested that his name be removed from their list of collections and sent a copy of the final statement from T-Mobile and check #217 show that he had paid.

23.     On September 15, 2006 Defendant Credit Management Control, Inc sent another letter to Plaintiff Avrohom Wolowik including a copy of the itemization of the alleged debt for $106.18 owed from a previous balance with T-Mobile. Plaintiff, Avrohom Wolowik did not know what else to do to stop another credit agency from trying to collect the alleged debt, as he had already sent proof of his final payment to Defendant T-Mobile, First Revenue Assurance, and Credit Management Control, Inc.

24.     Plaintiff, Avrohom Wolowik received two more letters from Defendant Credit Management Control, Inc on November 13, 2006 and November 22, 2006. After numerous phone calls and letters disputing the debt with Defendants, Plaintiff Avrohom Wolowik became depressed due to harassment and emotional distress Defendants were causing his family.

## FIRST CLAIM: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

25. The allegations of paragraphs 1-24 in this pleading are incorporated as if fully rewritten herein.

26. Defendants violated 15 U.S.C 1692e by representing misleading information in connection with the existence of a debt.

27. Defendants violated 15 U.S.C. 1692e(2) by representing misleading information in the character, amount or legal status of the alleged debt.

28. Defendants violated 15 U.S.C. 1692e(8) by communicating false credit information, including failure to communicate that the debt was paid in full.

29. Defendant violated 15 U.S.C. 1692f(1) by attempting to collect an amount not authorized or permitted by law;

30. Defendant violated 15 U.S.C. 1692f(5) by causing bank charges to be made to the consumer.

31. As a direct and proximate result of thereof, Plaintiff have been injured and may continue to suffer such injury in the future.

32. As a direct and proximate result of the above violations of the FDCPA, Defendants are liable to Plaintiff for declaratory judgment that Defendant's conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

## SECOND CLAIM: VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")

33. The allegations of paragraphs 1-32 in this pleading are incorporated as if fully rewritten herein.

34.    Defendants, T-Mobile, Control Credit Management, Inc., and First Revenue Assurance, are "users" of credit information and "furnishers" of credit information as stated in the Fair Credit Reporting Act.

35.    Defendant, T-Mobile violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2 by furnishing to credit reporting agencies inaccurate information about the debt, failing to state that the debt was paid or at least that the debt was disputed.

36.    Defendant willfully violated the mandates of section 1681s-2[b] by failing to conduct an investigation with respect to the disputed information, failing to report the results of the investigation to the consumer reporting agencies, and failing to modify or delete the disputed item of information. Such violations form the basis of a negligence per se claim and an intentional tort, per se.

37.    Defendant likewise violated the mandates of section 1681s-2[a] by furnishing information relating to Plaintiff to a consumer reporting agency although Defendant knew and had reasonable cause to believe that the information is inaccurate, reporting information after notice and confirmation of errors and failing to correct and update information. Such violations form the basis of a negligence per se claim and an intentional tort, per se.

38.    Defendant knew or should have known or consciously avoided knowing that the information had repeatedly reported about Plaintiff was false and improperly attributed to Plaintiff. Defendant was further notified by Plaintiff of the errors and the disputes, yet Defendant failed to report such information as disputed to the consumer reporting agencies.

39.    Said information was negative and damaging to Plaintiff.

40. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters reported.

41. Defendants' publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

42. Defendants were notified of its false reporting however Defendants continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

43. Defendants were aware that its reportings and activities would [and will] damage Plaintiff and his ability to enjoy life and utilize the credit rating and reputation property rights he secured by honoring his obligations to his creditors.

44. The consumer reporting agencies maintain subscriber contracts and relationships with Defendants separately and individually, under which Defendants is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

45. Under the subscriber contracts Defendants owes a number of duties, including the duty to report truthful and accurate information about its customers and other consumers, including Plaintiff.

46. As a direct and proximate result of thereof, Plaintiff have been injured and may continue to suffer such injury in the future.

47.	As a direct and proximate result of the above violations of the FCRA, Defendants are liable to Plaintiff for declaratory judgment that Defendant's conduct violated the FCRA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

### THIRD CLAIM: VIOLATION OF THE FAIR CREDIT BILLING ACT ("FCBA")

48.	Plaintiff re-alleges and incorporates paragraphs 1 through 47 above as if fully set out herein.

49.	Defendant T-Mobile violated the Federal Fair Credit Billing Act, 15 U.S.C. §1666(a)(A) ("FCBA") by its refusal and failure to respond to Plaintiff's dispute letter.

50.	Defendant T-Mobile violated the Federal Fair Credit Billing Act, 15 U.S.C. §1666(a)(B)(i) ("FCBA") by its failure to make appropriate corrections in the account of the Plaintiff, including the removal of amounts erroneously billed, and by its failure to transmit to the Plaintiff a notification of such corrections and the creditor's explanation of any change in the amount indicated by the Plaintiff, as required by 15 U.S.C. §1666(a)(B)(i) ("FCBA").

51.	As a result of Defendant T-Mobile's violation of the FCBA, Defendants are liable to Plaintiff for actual and statutory damages and for attorney's fees and cost pursuant to 15 U.S.C. §1640.

### FOURTH CLAIM: INFLICTION OF EMOTIONAL DISTRESS

52.	The allegations of paragraphs 1-51 in this pleading are incorporated as if fully rewritten herein.

53.	This claim is for tortuous infliction of emotional distress caused to Plaintiff by Defendants.

54. Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

55. During the course of their actions, and/or subsequent thereto, Defendants have recklessly and/or intentionally caused severe emotional distress to Plaintiff without protection of law and at a time when it knew or should have known that its actions would do so.

56. As a direct and proximate result thereof, Plaintiff was injured and may continue to suffer such injury in the future.

## FIFTH CLAIM: DEFAMATION

57. The Plaintiff re-alleges and incorporates paragraphs 1 through 54 above as if fully set out herein.

58. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters asserted.

59. Defendant's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress and mental anguish to Plaintiff.

60. Defendants were notified of inaccuracies and problems by Plaintiffs however, the Defendants continued to issue and/or publish report(s) to third parties, which contained inaccurate information about Plaintiffs.

61. Defendants acted with willful intent and malice to harm Plaintiffs.

## PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY

**WHEREFORE,** Plaintiff respectfully prays that judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants' conduct violated the FDCPA, FCRA and FCBA, and declaratory and injunctive relief for Defendants' violations of the Consumer Act;

B. Actual damages as proven at trial, on each and every claim;

C. Statutory damages, where applicable;

D. Costs and reasonable attorney fees; and

E. For such other and further relief as may be just and proper.

Plaintiff hereby demands a trial by jury on all issues and all claims.

DATED: August 6, 2007
       Spring Valley, NY                         _____/s/ _____

Law Office of Shmuel Klein, PC
268 Route 59 West
Spring Valley, NY 10977